UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HAJIME BROWN,<br><br>Plaintiff,<br><br>v.<br><br>MANDARICH LAW GROUP, LLP, et al.,<br><br>Defendants. | Case No. 13-cv-04703-JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO OFFSET JUDGMENT IN PART**<br><br>Re: Dkt. No. 40 |

Plaintiff David Hajime Brown brought this action against Defendants Mandarich Law Group, LLP, and CACH LLC, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 , and its California counterpart, the Rosenthal Fair Debt Collection Practices Act, after they sent him a collection letter directly rather than through his counsel. Defendants subsequently agreed to jointly and severally pay Plaintiff $2,000.00 in statutory damages (Dkt. No. 26), and the Court granted Plaintiff's Motion for Attorney Fees in the amount of $8,002.86. (Dkt. No. 39 at 1.) Now pending before the Court is Defendant CACH's Motion to Offset Judgment. (Dkt. No. 40.) Defendant CACH seeks to reduce the Court's judgment against it to $1,217.95, offsetting the total judgment previously entered against Defendants by $8,784.91, the amount of a separate judgment that Defendant CACH obtained against Plaintiff in the Alameda Superior Court plus accrued interest. Having considered the parties' submissions, the Court concludes that oral argument is not necessary, *see* Civ. L. R. 7-1(b), and GRANTS Defendant CACH's motion as to the judgment for statutory damages, but not for attorney's fees.

## FACTUAL & PROCEDURAL BACKGROUND

On an unknown date, Plaintiff incurred a financial obligation in the form of a consumer credit account with MBNA America N.A. (Dkt. No. 1 ¶ 12.) The debt was later sold, assigned or

otherwise transferred to Defendant CACH for collection from Plaintiff. (Dkt. No. 13 at 3.) Defendant CACH, represented by Defendant Mandarich Law Group, LLP, brought suit against Plaintiff in the Superior Court of California, Alameda County, and on April 30, 2012, obtained judgment against Plaintiff for $7,809.07, plus post-judgment interest. (Dkt. No. 40-1.) Defendants contend, and Plaintiff does not dispute, that he has failed to make payments or arrangements towards that judgment and that Plaintiff is insolvent or has no intention of paying.

On October 9, 2013, Plaintiff brought this FDCPA action against Defendants Mandarich and CACH based on a collection letter on the judgment sent directly to Plaintiff instead of his attorney. The Court subsequently entered judgment against Defendants jointly and severally, pursuant to a stipulated judgment awarding Plaintiff $2,000.00 in statutory damages. (Dkt. No. 26.) Later, on April 2, 2014, the Court granted Plaintiff's motion for Attorney Fees in the amount of $8,002.86. (Dkt. No. 39.)

Defendant CACH now moves the Court to offset the judgment against it by the $8,784.91 judgment it obtained against Plaintiff in state court over two years ago.[1]

## LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 69, "a money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). No federal statute governs here. In California, a judgment debtor who owns a judgment against her judgment creditor may go into the court in which the judgment against her was rendered and have her judgment offset against the first judgment. *Harrison v. Adams*, 20 Cal.2d 646, 648 (1942); see also *Brienza v. Tepper*, 35 Cal. App. 4th 1839, 1847-48 (1995) ("we accept the principle that a judgment debtor who has acquired a judgment or claim against his judgment creditor may ask the court in which the judgment against him was rendered to have his

---

[1] Although the original judgment was for $7,809.07, Defendant CACH seeks an offset of $8,784.91 which, according to CACH, includes $975.84 in post-judgment interest.

1 judgment or claim offset against the first judgment"). Allowance of an offset lies within the
2 sound discretion of the trial court. *Riggs v. Gov't Emp. Fin. Corp.*, 623 F.2d 68, 73 (9th Cir.
3 1980); see also *Reed v. Global Acceptance Credit Co.*, 2008 WL 3330165 (N.D. Cal. Aug. 12,
4 2008) (stating in an FDCPA action that offset is within the trial court's discretion).

## DISCUSSION

Defendant CACH seeks to reduce the judgment against it in this action by the judgment previously entered against Plaintiff in state court. Defendant contends that offset is proper as it eliminates a superfluous exchange of funds between the parties, and that Plaintiff's potential insolvency and evasion of the previous judgment support offset. Plaintiff counters that allowing a creditor to collect consumer debts in a FDCPA action contravenes the Act's legislative purpose and chills future claims. Alternatively, Plaintiff asks the Court to only grant the motion in part because Defendant's right to offset is inferior to Plaintiff's attorney's fees; thus, the Court should only offset the $2,000.00 in statutory damages, not the $8,002.86 in attorney's fees.

Thus, there are two questions before the Court: 1) is offset in this case proper or does it conflict with the legislative purpose of the FDCPA; and 2) if offset is warranted, do Plaintiff's attorney's fees have priority over Defendant's right to offset.

### A.   An Offset of Statutory Damages Does Not Violate FDCPA Public Policy

The FDCPA "is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). Congress designed the FDCPA to encourage private parties to bring actions, mandating an award of attorney's fees "as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008) (internal quotation marks and citation omitted). Offsetting Plaintiff's statutory damages award by Defendant's previously obtained judgment does not inherently conflict with these legislative principles: it would neither remove the incentive for future plaintiffs to bring claims, nor would it discourage attorneys from representing them.

As an initial matter, the Court notes that the offset would only be as to the statutory

1  damages owed by Defendant CACH, because there is no offset sought as to Defendant Mandarich;
2  thus, Plaintiff can recover the full judgment from Mandarich regardless of the outcome of
3  Defendant CACH's motion.

4  In any event, Plaintiff's public policy arguments rest on inapposite cases. Plaintiff cites
5  cases that consider whether to join FDCPA claims with state law counterclaims brought by
6  defendant creditors. *See Reed v. Global Acceptance Credit Co.,* No. 08-01826-RMW, 2008 WL
7  3330165, at *7 (N.D. Cal. Aug. 12, 2008) (noting that courts rarely allow setoff counterclaims in
8  FDCPA actions as such claims are contrary to the policies underlying the FDCPA); *Sparrow v.*
9  *Mazda Am. Credit,* 385 F.Supp.2d 1063, 1071 (E.D. Cal. 2005) ("[S]trong policy reasons exist to
10 prevent the chilling effect of trying FDCPA claims in the same case as state law claims for
11 collection of the underlying debt"); *Campos v. Western Dental Serv., Inc.,* 404 F.Supp.2d 1164,
12 1170 (N.D. Cal. 2005) (holding that "strong public policy reasons exist for declining to exercise
13 jurisdiction over defendant Western's counterclaim" for the underlying debt in a FDCPA suit);
14 *Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48, 50 (W.D.N.Y. 1987) (concluding that it
15 would violate the FDCPA's legislative purpose to allow counterclaims by defendant creditors for
16 underlying debt in FDCPA actions because it "would impede expeditious enforcement of the
17 federal penalty"). These courts reason that joining counterclaims for underlying debt in an
18 FDCPA action violates public policy because, in defiance of congressional intent, it
19 inappropriately creates a venue for creditors to litigate outstanding debts, thus removing the
20 incentive for plaintiffs to bring FDCPA claims against creditors. These cases are distinguishable,
21 however, as Defendant is not seeking to bring a counterclaim for an alleged debt; rather,
22 Defendant seeks enforcement of a previously obtained judgment. Thus, the courts' concern with
23 creating a forum for an FDCPA defendant to obtain a judgment on the debt is inapplicable here.

24 Plaintiff's reliance on *Dias v. Bank of Hawaii*, 732 F.2d 1401 (9th Cir. 1984), is also
25 unpersuasive. There the Ninth Circuit held that a Truth in Lending Act ("TILA") judgment could
26 not be offset by a *pending* claim for a debt; that is, a claim which had not yet been reduced to
27 judgment. The Ninth Circuit reasoned that "most state courts do not permit judgments to be
28 satisfied by reduction of a *pending* claim. This is because a claim is only an assertion of an

4

amount due. Allowing satisfaction of a judgment against a mere claim would undermine the judgment creditor's right to have the judgment satisfied." *Id.* at 1403. The court also warned that allowing lenders to satisfy TILA judgments against them with pending claims against the plaintiff would frustrate TILA's purpose by discouraging consumers from bringing TILA actions. *Id.* Those concerns are not present where, as here, the debt is not a pending claim, but in fact has previously been reduced to a valid judgment. Offsetting a judgment against a pending claim could have a chilling effect, because plaintiffs with unsettled debts would realistically fear bringing TILA claims against creditors if they knew their unsettled debts could and likely would be adjudicated in the action. Judgment offset here does not have the same chilling effect on Plaintiff or future plaintiffs because the judgment being offset is not pending, but finalized. Indeed, Plaintiff filed this action after Defendant's claim against Plaintiff had been reduced to a collectable judgment.

Plaintiff cites *Riggs v. Gov't Emp. Fin. Corp.*, 623 F.2d 68, 73 (9th Cir. 1980) for a similar proposition. There, the Ninth Circuit held that a district judge did not abuse its discretion to deny offset of a TILA judgment obtained by a bankruptcy trustee by a preexisting debt of the bankrupt consumer. *Id.* at 74 ("By allowing lenders to subtract Truth-in-Lending awards from amounts owed them by bankrupt borrowers, the district court would eliminate any incentive for bankruptcy trustees to pursue Truth-in-Lending claims."). In *Riggs*, a bankruptcy trustee brought the TILA action against the creditor, so allowing offset would have precluded the trustee from obtaining any relief on the TILA claim, thus removing the incentive for bankruptcy trustees to bring TILA claims at all. *Id.* Here, in contrast, the FDCPA judgment was not obtained by a third party, such as the bankruptcy trustee, but rather by the debtor himself. Even with an offset Plaintiff has an incentive to bring suit as he still obtains relief, effectively erasing $2,000.00 of his owed judgment to CACH.

Permitting an offset of statutory damages here does not take the sting out of the FDCPA damages against Defendant. Defendant CACH collects $2,000.00 less of the judgment legally owed by Plaintiff, representing a substantial penalty that will deter Defendant from repeating the same actions in the future. Further, Plaintiff can still recover the statutory damages owed by

5

1  Defendant Mandarich. In sum, while legislative intent is important in determining the propriety of
2  offset for FDCPA claims, granting the motion to offset in part under the circumstances here will
3  not contravene that legislative intent.

### B. Attorney's Fees Have Priority Over Offset

While neither the Ninth Circuit nor the California Supreme Court provide a definitive answer as to whether attorney's fee awards have priority over offset in an FDCPA claim, courts generally consider multiple factors in balancing the equities, the most prominent of which are: 1) public policy; *Cetenko v. United California Bank*, 30 Cal. 3d 528, 536 (1982); 2) time of creation of the competing equitable rights; *Id.*; 3) nature of the claim against which offset is sought; *Salaman v. Bolt*, 74 Cal. App. 3d 907, 919 (1977); *Brienza v. Tepper*, 35 Cal. App. 4th 1839, 1848 (1995); and 4) details of the attorney-client fee arrangement; *Pou Chen Corp. v. MTS Products*, 183 Cal. App. 4th 188, 194 (2010); *Margott v. Gem Properties, Inc.,* 34 Cal. App. 3d 849, 856 (1973)**.**

#### i. Public Policy Favors Attorney's Fees Over Offset

Although offsetting statutory damages does not contravene the legislative intent behind the FDCPA, an offset of attorney's fees would chill FDCPA claims, reducing the incentives for plaintiffs to bring FDCPA claims and for attorneys to represent them. Offset should not prevail over attorney's fees if this result would deprive future plaintiffs of legal representation. *Cetenko,* 30 Cal.3d at 535–536 (attorney's lien on judgment prevailed over the lien of a subsequent judgment creditor because otherwise persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees); *see also Brienza*, 35 Cal. App. 4th at 1850 (attorney's contractual lien for fees prevailed over subsequently acquired right of offset because otherwise attorneys would generally be far less willing to represent clients with meritorious cases). Offset is also "patently unfair" where it would effectively force attorneys to satisfy the debts of their clients. *Wujcik v. Wujcik*, 21 Cal. App. 4th 1790, 1794-95 (1994) (favoring offset over attorney's fees because prioritizing a child support judgment over the liens of the medical providers and attorney would not hold appellant responsible for paying child support arrearages, but rather, would hold the medical providers and the attorney responsible for paying

1    appellant's child support obligation out of their pockets).

2    Likewise, if the Court here were to prioritize offset over attorney's fees, the Court would
3    effectively mandate that the attorney pay Plaintiff's debt.  This outcome would surely chill
4    FDCPA claimants—no prudent attorney would bring FDCPA claims with the knowledge that they
5    would end up satisfying their clients' debts out of their own pockets.  Because giving offset
6    priority over attorney's fees contravenes legislative intent by reducing the incentives for plaintiffs
7    to bring FDCPA claims and for attorneys to represent them, the Court declines to offset the
8    attorney's fee award.

### ii. Plaintiff's Attorney's Fees Have Priority Because They Are First in Time

According to statute, "other things being equal, different liens upon the same property have priority according to the time of their creation." Cal. Civ. Code § 2897.  An attorney's lien is created at the time of the contract and has priority over attachments levied on the verdict and judgment by a creditor with whom the client had a preexisting debt.  *Haupt v. Charlie's Kosher Market,* 17 Cal.2d 843, 846 (1941), *see also Cetenko,* 30 Cal.3d at 535-536 (contractual liens against a personal injury award entered into prior to initiating a legal action had priority over a judgment creditor's lien created by filing notice once the action is pending).

Here, Plaintiff's attorney has a contractual lien that arose first in time.  Although Defendant had already obtained judgment against Plaintiff before this FDCPA action began, Plaintiff's attorney's lien on the judgment here was created first, as it formed when Plaintiff made contractual arrangements with his attorney, who also represented him in the state court proceeding, prior to bringing suit.  Defendant has attempted to legally create a lien by filing this motion, but   Plaintiff's counsel's contractual lien existed previously and takes priority over Defendant's subsequent attempt to levy an attachment on the judgment.  Accordingly, this factor also weighs in favor of prioritizing the attorney's fee award.

### iii. Offset is Subordinate to Attorney's Fees Because the Competing Equities Arise from Wholly Independent Actions

The nature of the claim that Defendant seeks to offset is relevant in balancing the equities. *Brienza*, 35 Cal. App. 4th 1839 (holding that defendant's judgment could not be accorded the

same weight in equity because it was purchased from another party at a discount, not obtained by filing suit); *see also Salaman*, 74 Cal. App. 3d 907 (citing the finality of the other judgment and the absence of laches or inequitable conduct to determine that offset of a separate judgment had priority over attorney's fees). In the instant case, Defendant did obtain the prior judgment by filing suit and the judgment is final, which appears to weigh in favor of prioritizing offset.

However, courts also look to whether the judgments arise in the same action or different actions. *Brienza*, 35 Cal. App. 4th at 1892 ("[W]hile an attorney's lien is subordinate to the rights of the adverse party to offset judgments in the same action or in actions based upon the same transaction, it is nevertheless superior to any right to offset judgments obtained in wholly independent actions….") (internal citations and quotation marks omitted). FDCPA claims and debt collection actions based on the same underlying debts are distinct actions. *Campos v. Western Dental Serv., Inc.,* 404 F.Supp.2d 1164, 1170 (N.D. Cal. 2005). Because Plaintiff's FDCPA claim and Defendant's state court judgment stem from two wholly independent actions, this factor also weighs in favor of prioritizing attorney's fees.

### iv. Information on the Attorney-Client Contract is Unavailable, Nonessential to the Inquiry, and Insufficient to Prioritize Offset Over Attorney's Fees

The Court has no information about the contractual agreement between Plaintiff and his attorney. Although neither party raises this point directly, some courts have examined the attorney-client fee agreement in balancing the equities to determine the existence of a charging lien. *See, e.g.*, *Pou Chen Corp.*, 183 Cal. App. 4th at 192 (offset had priority over attorney's contractual lien distinguishing *Brienza* on the ground that the liens arose from hourly, not contingent, fee agreement); *see also Margott*, 34 Cal. App. 3d at 856 (favoring offset when respondent's agreement with her attorney granted 40 percent of all amounts received by respondent and the court viewed respondent as receiving zero funds after offset, so the attorney was entitled to zero in fees).

Because neither party submitted any information regarding the nature of the attorney's fee agreement here, and this information is not necessary to the Court's exercise of its discretion, the Court declines to inquire into the nature of the contract. Further, even if the Court did inquire and,

8

upon doing so, found that Plaintiff's counsel had no charging lien or that the contract in the instant case was identical to the contract in *Margott* or *Pou Chen*, this one factor would not sway the equities in favor of offset given the weight of the other three factors in favor of prioritizing the attorney's fees.

In sum, the Court finds that the equities favor attorney's fees over offset because 1) FDCPA legislative intent favors attorney's fees over offset; 2) Plaintiff's attorney's contractual lien came first in time in this action; 3) the attorney's fees and Defendant's right to offset arise from wholly independent actions; and 4) information on the attorney-client contract is unnecessary, unavailable in the record, and even in the case most favorable to Defendant, insufficient to sway the equities towards offset.  Limiting the offset in this way respects the legislative purpose of the FDCPA, balances the equities of offset and attorney's fees with informed discretion, and also supports the efficient enforcement of valid judgments.

## CONCLUSION

For the reasons explained above, the Court GRANTS CACH's motion IN PART. Plaintiff's judgment in this action against CACH is reduced by $2,000.00, such that Plaintiff's total judgment against CACH is now $8,002.86, the amount awarded in attorney's fees.  This Order does not affect Plaintiff's judgment against Mandarich Law Group.

**IT IS SO ORDERED.**

Dated: June 20, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge